```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
RODOLFO RUIZ

        Plaintiff,                    MEMORANDUM AND ORDER

    -against-                         Civil Action No.
                                      CV-03-5426 (DGT)
WILLIAM PHILLIPS

        Defendant.

---------------------------------X
```

Trager, J:

Petitioner Rodolpho Ruiz ("Ruiz") brings this petition for writ of habeas corpus pro se pursuant to 28 U.S.C. § 2254. Ruiz raises the following two claims: (1) that he was denied effective assistance of counsel when his appellate counsel failed to file a speedy trial motion under New York Criminal Procedure Law § 30.30 and (2) that the evidence was insufficient to support his conviction for Arson and Attempted Murder. For the reasons that follow, the petition is denied.

**Background**

**(1)**

A jury convicted Ruiz for arson and attempted murder in connection with two fires which occurred in Queens during February 1997. The following facts are uncontested by the parties.

Both fires involved property owned by recent acquaintances of Ruiz, Camilo and Gloria Garcia. On February 8, 1997, at approximately 8:00 a.m., Gloria Garcia and her daughter, Brenda, awoke to find their apartment in flames. Emergency medical technicians who arrived to the scene found Gloria and Brenda Garcia unconscious and in respiratory and cardiac arrest. Doctors diagnosed Gloria and Brenda Garcia with smoke inhalation and carbon-monoxide poisoning; Gloria Garcia was additionally treated for second-degree burns on her hands. Four days later, on February 12, 1997, at approximately 1:30 a.m., Camilo Garcia awoke to the sound of an explosion and found both his car and his home on fire. No one was injured in the second fire.

Based on a tip from an eyewitness, Luis Panora, who saw a Hispanic man running from the Garcias' driveway after the February 12th fire, Fire Marshal William Kregler arrested Ruiz approximately four hours after the fire occurred.

(2)

Ruiz was thereafter arraigned on February 13, 1997 in Queens Criminal Court, where he allegedly waived his right to a speedy trial for twenty-eight days until March 12, 1997.

He was charged with Arson in the First Degree (Penal Law § 150.20[1]), two counts of Arson in the Second Degree (Penal Law § 150.15), Arson in the Third Degree (Penal Law § 150.10[1]), three counts of Attempted Murder in the Second Degree (Penal Law

§§ 110/125.25[1]), three counts of Assault in the First Degree (Penal Law § 120.10[1],[4]), two counts of Reckless Endangerment in the First Degree (Penal Law § 120.25) and Criminal Mischief in the Second Degree (Penal Law § 145.10).

Ruiz was tried in Queens Criminal Court before Judge Lawrence J. Finnegan. The prosecution's case consisted of testimony from a series of witnesses who received threatening and/or incriminating phone calls from Ruiz between December 1996 and February 1997, as well as from an eyewitness, the investigating and arresting fire marshals, the emergency medical technicians and doctors who treated Gloria and Brenda Garcia.

Gloria and Camilo Garcia, Jose Fernando Castano, and Victoria Casado all testified regarding phone calls from Ruiz in which he revealed anger stemming from his belief that two women – Gloria Garcia and Aydee Colon – were hiding his former girlfriend.[1]

According to Gloria Garcia's testimony, beginning in late December 1996, she received a series of harassing phone calls from Ruiz. During the first call, petitioner told Gloria Garcia that he had heard that his former girlfriend was staying with her family; during the second call, Ruiz informed her that he was suffering and that she and others were going to suffer as well

---

[1] Ruiz's girlfriend, friends of Gloria Garcia and Aydee Colon, had allegedly disappeared in September 1996.

and during a third conversation, petitioner threatened a tenant in the Garcias' building.

Camilo Garcia's testimony affirmed his wife's testimony, detailing an additional call from Ruiz in January 1997 during which Ruiz reiterated his threats against the Garcias and their tenant.

Additional testimony demonstrated that Ruiz also made three threatening calls to Aydee Colon's son-in-law, Jose Fernando Castano, in February 1997. According to Castano's testimony, on February 4, 1997, petitioner called Castano and told him he intended to "turn to ashes" the home of one of the couples he thought was hiding his former girlfriend. Then, within an hour of the first fire at the Garcia home, Castano testified that petitioner again called him to inform Castano that he had already turned to ashes the home of one of the couples he believed to be hiding his former girlfriend.

Approximately two hours after the second fire, petitioner again called Castano, who secretly recorded the conversation,[2] and indicated that (1) his mother-in-law, Aydee Colon, and Gloria Garcia had "fucked it up with me;" (2) that he had loved someone and they had taken her away from him; and (3) that "he who stinks like, like straw . . . better be aware of fire." Petitioner also

---

[2] The People admitted a tape and transcript of this conversation into evidence during its case.

4

threatened that he was "going to end it for one of those from the Popular," the region of Colombia both Camilo Garcia and Aydee Colon's husband came from.

Ayedee Colon's daughter, Victoria Casado, also testified that she received a threatening call from petitioner around 3:00 a.m. on the morning of the February 12th fire. He stated that Aydee Colon and Gloria Garcia were going to pay dearly for having taken his former girlfriend from him. Petitioner told Casado that he knew "the police [were] going to kill him," but that he was going to finish the "job" he had started.

Apart from the testimony regarding these phone calls, the prosecution called eyewitness Luis Panora to the stand. Panora testified that at the time of the February 12th fire, he witnessed a Hispanic man, with short black curly hair, wearing a long black leather jacket and blue jeans, running from the Garcias' driveway. He further testified that he saw the same man drive away in a white, four-door car with a blue top and later identified both the car and petitioner in line-ups.[3]

Following Luis Panora's testimony, Fire Marshal William Kregler testified that when he arrested petitioner later that day, petitioner was driving a white, four-door car with a blue roof and was wearing clothing that matched Luis Panora's

---

[3] Castano testified that he had sold Ruiz a white, four-door Oldsmobile Delta 88 with a blue top and lent him his license plates.

5

description.  Both the car and petitioner's clothing, Kregler testified, smelled of gasoline.

Fire Marshals Kregler, Mike Smith and Anthony Asaro testified to the causes of the two fires.  In each case, evidence at the scene indicated that someone poured flammable liquid under the Garcias' side-door entrance and ignited it.  The car fire likewise was a result of someone pouring a flammable liquid on the roof of the car and igniting it.

### (3)

The defense case consisted of testimony from petitioner and two alibi witnesses.  Petitioner denied all culpability in the fires.  Furthermore, Ruiz rejected the notion that he had any animosity toward the Garcias, with whom he allegedly had not spoken since November 1996.

To establish his alibi for the first fire, the defense relied on Homero Lucas, the owner of Flat Fix Auto Parts and an acquaintance of petitioner for two months prior to the fire. Lucas testified that on the morning of the first fire, he arrived at his shop sometime between 8:00-8:30 a.m.  Although he remembered petitioner's presence at the shop sometime that day, Lucas did not recall what Ruiz was wearing on that occasion. Moreover, Lucas gave inconsistent testimony concerning his contact with Ruiz both before and after the fires.

To establish petitioner's alibi for the second fire, the

defense called Miguel Vazquez, petitioner's roommate from December 21, 1996 until February 12, 1997. Vazquez testified that petitioner was at home when the fire occurred. Vazquez specifically recalled that, after drinking with Ruiz for hours, he went to sleep just before midnight. According to Vazquez, he laid awake in bed until 3:15 a.m., the approximate time of the fire at the Garcias' home, when he asked petitioner to turn down his music because he could not sleep and had to wake up at 4:00 a.m. to go to work.

The jury convicted Ruiz of Arson in the First Degree (Penal Law § 150.20[1]), Arson in the Second Degree (Penal Law § 150.15), Arson in Third Degree (Penal Law § 150.10[1]) and three counts of Attempted Murder in the Second Degree (Penal Law §§ 110/125.25[1]).

Ruiz was sentenced to concurrent indeterminate terms of from twenty-five years to life for the first-degree arson count and from twelve and one half to twenty-five years for the attempted murder of Gloria Garcia, both stemming from the February 8, 1997 fire. Ruiz was also sentenced to concurrent indeterminate terms of from twelve and one half to twenty-five years each for the second degree arson count and the attempted murder of Camilo Garcia and from five to fifteen years for the third degree arson count, all stemming from the February 12, 1997 fire. The concurrent sentences stemming from the February 8, 1997 fire were

to run consecutively to the concurrent sentences stemming from the February 12, 1997 fire, and both concurrent sentences were to run consecutively with the indeterminate term of from twelve and one half to twenty-five years imposed for the attempted murder of Brenda Garcia, stemming from the February 8, 1997 fire.

Ruiz appealed his conviction to the Appellate Division, Second Department, in June of 2000. His appeal raised two claims: (1) the verdict was against the weight of the evidence and (2) the trial court erred when it imposed a sentence of attempted murder of Brenda Garcia to run consecutively with the sentence for the attempted murder of Gloria Garcia and the first degree arson count, all of which stemmed from the February 8, 1997 fire. Appellate counsel further argued that the sentence should be reduced in the interest of justice.

Although the Appellate Division found that Ruiz's sentence for all the charges relating to the February 8, 1997 fire should run concurrently, it neither reduced Ruiz's sentence nor granted his appeal. With regard to his claim of legal insufficiency, the Appellate Division unanimously held that it was both unpreserved for appellate review and devoid of merit. People v. Ruiz, 291 A.D.2d 418, 738 N.Y.S.2d 59 (2d Dept. 2002). The Court of Appeals denied Ruiz's motion for leave to appeal on June 25, 2002. People v. Ruiz, 98 N.Y.2d 780, 746 N.Y.S.2d 470 (2002).

In December 2002, Ruiz filed a pro se petition for a writ of

error coram nobis based on his appellate counsel's failure to raise on appeal his trial counsel's alleged ineffectiveness. Specifically, Ruiz asserted that his trial counsel was deficient in not bringing a speedy trial motion pursuant to New York Criminal Procedure Law § 30.30 and both the New York State and United States Constitutions.

The Appellate Division, Second Department, denied his application for a writ of error coram nobis on May 13, 2003, finding that Ruiz had failed to establish that he had been denied effective assistance of counsel. People v. Ruiz, 305 A.D. 521, 759 N.Y.S.2d 341 (2d Dept. 2003). The Court of Appeals denied Ruiz's petition for leave to appeal on August 5, 2003. People v. Ruiz, 100 N.Y.2d 598, 798 N.Y.S. 358 (2003).

**Discussion**

Ruiz filed this habeas petition pro se on October 14, 2003. Ruiz's petition alleges (1) that he received ineffective assistance of appellate counsel and (2) that the evidence adduced at trial was legally insufficient to support conviction. His petition is denied for the reasons that follow.

**(1)**

A federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state

court only if it concludes that the adjudication of the claim either "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d).

Petitioner first claims his constitutional right to effective assistance of appellate counsel was violated. Specifically, petitioner argues that his appellate counsel was deficient for not questioning on appeal the (1) failure by trial counsel to file a speedy trial motion pursuant to New York Criminal Procedure Law § 30.30 and (2) failure of the trial court to grant a hearing to determine the merits of an alleged pretrial speedy trial motion he filed pro se.

The Supreme Court has not yet held that counsel's failure to raise a state law claim, a claim otherwise not properly before a federal habeas court, may constitute grounds for ineffective assistance of counsel under the United States Constitution. Cf. Sellan v. Kuhlman, 63 F. Supp. 2d 262, 269 (E.D.N.Y. 1999) (see discussion of Sixth Amendment ineffective assistance claims based on counsel's failure to raise state law grounds), aff'd on other grounds, 261 F.3d 303, 309 (2d Cir. 2001). Regardless, it is the practice in this Circuit to review such an ineffective assistance

claim. Parron v. Quick, 869 F.2d 87, 90 (2d Cir. 1989) (denying as unexhausted a habeas petition grounded on counsel's failure to file a timely motion under New York Criminal Procedure Law § 30.30); Claudio v. Scully, 982 F.2d 798, 803 n.5 (2d Cir. 1992) ("The federal constitutional right to effective assistance of counsel may be violated by an attorney's failure to raise a meritorious state law claim or defense.").

In order to prevail on a claim of ineffective assistance of appellate counsel, a petitioner must demonstrate that his attorney's representation (1) "fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) ("Although the Strickland test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel"); Claudio v. Scully, 982 F.2d at 803; Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir. 1990).

A court reviewing an attorney's performance must be "highly deferential" and must make "every effort [ ] to eliminate the distorting effects of hindsight," evaluating "the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689;

11

See also Loliscio v. Goord, 263 F.3d 178, 192 (2d Cir. 2001). Thus, a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; DeLuca v. Lord, 77 F.3d 578, 584 (2d Cir. 1996).

In the instant case, Ruiz has failed to meet this heavy burden. His ineffective assistance of counsel claim rests on an underlying state law claim which is both wholly unsubstantiated and without merit. Without citing to the relevant parts of the record or even alleging any particularized facts relevant to the claim, Ruiz baldly asserts that he was detained for 210 days before the prosecution announced trial readiness, approximately 30 days beyond the six month period permitted by New York's speedy trial statute, New York Criminal Procedure Law § 30.30.[4] (Pet'r Br. at 6.) He further claims, but fails to substantiate, that on day 220 of his confinement, he submitted a speedy trial motion pro se which was not adjudicated by the trial court.[5]

Moreover, Ruiz has not contested three factual issues raised

---

[4] In this case, it is uncontested that the prosecution had 183 days during which to declare trial readiness. Petitioner's papers fail to state when trial readiness was finally declared.

[5] The People claim that this alleged pretrial motion was never filed, and contrary to petitioner's assertion, deny having ever opposed the motion. The People speculate, that perhaps petitioner mistakenly references a pro se motion the petitioner filed four months after he was tried and convicted.

12

by the People, any one of which would make his state speedy trial claim moot. The People allege that (1) twenty-eight days of time should not be attributable to the People because petitioner allegedly waived his right to a speedy trial (to March 12, 1997) at arraignment; (2) ninety-six additional days were allegedly attributable to the time petitioner was without counsel, through no fault of the trial court or the prosecution, and should be chargeable to petitioner; and (3) another ninety-six days were allegedly spent on pre-trial motions and is not chargeable to the prosecution. Taking into account this excludable time, the People's calculation totals 113 days of delay, a period of time well within the six months to which the People are entitled under New York's speedy trial statute.[6] Left uncontroverted by petitioner, these facts vitiate his claim under NY CPL § 30.30.

Given the apparent lack of any factual basis for petitioner's speedy trial allegations, appellate counsel's failure to raise this meritless claim on appeal cannot be said to demonstrate an unreasonable lack of professional judgment. See Reid v. Senkowski, No. 90 Civ. 0665, 1991 WL 22852, at *4 (E.D.N.Y. Feb. 8, 1991) (holding petitioner's ineffective

---

[6] This calculation takes into account fifty-eight days between petitioner's arraignment and the People's first declaration of readiness on April 11, 1997, minus the twenty-eight days petitioner waived, as well as an additional eighty-three days after initially declaring readiness during which the People were not ready to proceed to trial.

assistance claim to be without merit because it consisted of bald allegations that were unsupported by the record), aff'd, 961 F.2d 374 (2d Cir. 1992); Jones v. Hollins 884 F. Supp. 758, 766 (W.D.N.Y.) ("[W]ithout providing specific citations to the record, . . . [petitioner's] conclusory allegation, made without any factual or case law support, is insufficient to overcome the strong presumption of reasonable assistance."), aff'd, 89 F.3d 826 (2d Cir. 1995). Petitioner's first claim is therefore, rejected.

(4)

Ruiz's second claim is that the evidence at trial was legally insufficient to prove his guilt as to any of the charges of which he was convicted. The Appellate Division both held this issue to be "unpreserved for appellate review" and denied it on the merits. People v. Ruiz, 291 A.D.2d 418, 738 N.Y.S.2d 59, 60 (2d Dept. 2002).

Generally, where a trial court based its decision on an "independent and adequate state ground," a federal court reviewing a habeas petition is procedurally barred from addressing the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991). This rule applies even where, as here, the state court renders a decision based both on a procedural rule and in the alternative, on the merits. Harris v. Reed, 489 U.S. 255, 264 n.

14

10 (1989). Because the Appellate Division's enforcement of New York's contemporaneous objection rule (N.Y. Crim. Proc. Law §§ 470.05(2), 470.15(4), (6)) constitutes an independent and adequate state ground, Ruiz's claim is procedurally barred from federal review. See Garcia v. Lewis, 188 F.3d 71, 78-79 (2d Cir. 1999). Moreover, Ruiz does not present grounds for overcoming this procedural bar; he alleges neither (1) cause for the default and actual prejudice arising from the alleged violation of federal law; or (2) that failure to consider the claims would result in a fundamental miscarriage of justice. (Coleman, 501 U.S. at 750). Therefore Ruiz's claim remains procedurally barred because of the independent and adequate state ground.

Because the Appellate Division also rejected his sufficiency of the evidence claim on the merits, the standards of deference mandated under AEDPA, supra, must be applied to Ruiz's Due Process claim as well.

It is well established that in a criminal matter, the Due Process Clause of the Constitution requires the prosecution to prove beyond a reasonable doubt each fact necessary to constitute the offense with which a person is charged. In re Winship, 397 U.S. 358, 361-62 (1970). When a federal court reviews state convictions challenged on habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

15

have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original) (citation and internal quotation marks ommitted). A petitioner bears a "very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d Cir. 1997) (citations and internal quotation marks ommitted). The federal court must look to state law to determine the essential elements of the crime.

Ruiz has not come close to meeting this burden. Without the benefit of further specifics, presumably Ruiz challenges his entire conviction: Arson in the First Degree, Arson in the Second Degree, Arson in the Third Degree and Attempted Murder in the Second Degree.

With respect to Ruiz's arson convictions, New York state law dictates that:

> [a] person is guilty of Arson in the First Degree when he intentionally damages a building or a motor vehicle by causing an explosion or a fire when (a) such explosion or fire is caused by an incendiary device propelled, thrown or placed inside or near such building or motor vehicle; or when such explosion or fire is caused by an explosive; or when such explosion or fire either (i) causes serious physical injury to another person other than a participant, or (ii) the explosion or fire was caused with the expectation or receipt of financial advantage or pecuniary profit by the actor; and when (b) another person who is not a participant in the crime is present in such building or motor vehicle at the time; and (c) the defendant knows that fact or the circumstances are such as to render the presence of such person therein a

reasonable possibility.

N.Y. Penal Law § 150.20 (McKinney 2006).

Under New York Penal Law § 150.15, Arson in the Second Degree occurs when a person

> intentionally damages a building or motor vehicle by starting a fire, and when (a) another person who is not a participant in the crime is present in such building or motor vehicle at the time, and (b) the defendant knows that fact or the circumstances are such as to render the presence of such a person therein a reasonable possibility.

New York Penal Law § 150.15 (McKinney 2006).

New York Penal Law § 150.10 defines Arson in the Third Degree as the intentional damage to a building or motor vehicle by starting a fire or causing an explosion.

Viewed in the light most favorable to the prosecution, the evidence was more than sufficient to permit the jury to conclude that petitioner intentionally set fire to the Garcias' building and car. As already described, the prosecution relied upon testimony from multiple witnesses, including Jose Fernando Castano, who testified in reference to incriminating calls from petitioner that tied him to each fire. Jose Fernando Castano, Victoria Casado, Gloria and Camilo Garcia further testified that they had received threatening calls from petitioner prior to the fires; in one such conversation, Ruiz expressed his intention to

"turn to ashes" the house of one of two couples he believed to be hiding his girlfriend and in another he warned that "he who stinks like straw better be aware of fire."

In addition to the telephone calls, an eyewitness, Luis Panora, identified Ruiz fleeing from the second fire, and Fire Marshals Quiles and Kregler testified that petitioner and his car reeked of gasoline when he was arrested. Petitioner's claim of legal insufficiency of his arson convictions is, therefore, meritless.

Ruiz's claim of legal insufficiency of attempted murder convictions is likewise devoid of substance. Pursuant to New York Penal Law §§ 110.00, 125.25[1] a person is guilty of attempted murder in the second degree when a person with the intent to cause the death of another person engages in conduct which tends to effect the death of such a person or a third person. Viewed in the light most favorable to the prosecution, the evidence presented at trial and described above overwhelmingly demonstrates that petitioner made numerous threats against the Garcias and then intentionally set fire to their home and car to effect their death. Consequently, petitioner's second claim is rightly rejected.

## Conclusion

For these reasons, Ruiz's application for a writ of habeas corpus is DENIED and a certificate of appealability is not granted.  Clerk of Court is directed to enter judgment and close the case.

Dated:  Brooklyn, New York
        March 10, 2006

                                        SO ORDERED:


                                        ___/s/_____
                                        David G. Trager
                                        United States District Judge